HEPZIBAH HALL, Administratrix, *versus* TURELL TUFTS.

A testator devised certain real estate to his wife for her life, and " the remainder of his estate, whether real or personal, in possession or reversion, to his five children, to be equally divided to and among them or their heirs respectively, always intending and meaning that none of his children shall dispose of their part of the real estate in reversion, before it is legally assigned them." It was *held*, that the children took a vested remainder in the real estate given to the wife for her life, and that the clause restraining them from aliening the same before the expiration of the life estate, was void.

Where a note was given to " E. H." for a certain sum, payable on demand with interest, and some months afterward the promisor made a mortgage to E. H. 3d, conditioned for the payment of a note of the same date, for the same sum, payable on demand with interest, it was *held*, in an action on the mortgage, that parol evidence was admissible to show that E. H. and E. H. 3d were partners doing business in the name of E. H., and that the note to " E. H." was given for a debt due to the partnership, and was the note referred to and secured in the mortgage.

THIS was a writ of entry, on a mortgage. The plaintiff, as administratrix of the estate of Joseph P. Hall, demanded one undivided fifth part of certain real estate in Medford, declaring on the seisin of her intestate and a disseisin by the tenant. The tenant pleaded nul disseisin.

The case was submitted to the Court upon a statement of facts reported by a commissioner. It appeared, by his report, that in November, 1786, Simon Tufts made his last will, which was proved in January, 1787, wherein he gave the real estate described in the writ, to his wife for life, and " the remainder of his estate, whether real or personal, in possession or reversion, to his five children, to be equally divided to and among them or their heirs respectively, always intending and meaning that none of his children shall dispose of their part of the real estate in reversion, before it is legally assigned them."

Hall
v
Tufts.

Turell Tufts, the defendant, and Hall Tufts, the mortgager, were two of the five children of the testator. His wife entered on the land in question, and held it until her death, which happened in August, 1830. The testator gave other lands to his children, on which they entered ; and his estate was divided according to his will, by a warrant from the judge of probate, in 1790. In the early part of 1796, Hall Tufts sold all his patrimony except his portion of the remainder in the demanded premises.

On the 13th of March, 1798, Hall Tufts made a note of hand, whereby he promised to pay Ebenezer Hall or order $495·21, on demand, with interest ; which was in the handwriting of Ebenezer Hall 3d, son of Ebenezer, and was witnessed by him.

On the 5th of December, 1798, Hall Tufts being then resident at Hartford in Connecticut, made a deed of mortgage, in which he says, " I, Hall Tufts, of Medford, &c. do for and in consideration of the sum of $495·21 had and received, and paid by Ebenezer Hall 3d, of Medford aforesaid, remise, release, and forever quitclaim unto the said Ebenezer Hall 3d, and to his heirs and assigns, all my right, title, claim and demand which I have in and unto all the real estate situate in Medford aforesaid, and is the same real estate which was given me by the will of my father Simon Tufts, &c. To have and to hold the above remised and released premises to him the said Ebenezer Hall 3d, and to his heirs and assigns forever, to his and their own proper use, benefit and behoof. . . . . . Always provided, and these presents are upon condition, that whereas the said Ebenezer Hall 3d, by a note of hand, dated Medford, March thirteenth, one thousand seventeen hundred and ninety-eight, for the sum of $495·21, payable on demand and on interest, had and signed by Hall Tufts, and as a further security and collateral security for the payment of the sum contained in said note, this instrument is made. Now in case the said Hall Tufts shall well and truly pay to the said Ebenezer Hall 3d, the sum contained in said note and the interest thereof, then the foregoing instrument is to be null and void and of no effect, otherwise to stand and remain in full force, power and virtue in the law." The mortgage was written by Hall

Tufts himself and was enclosed in his letter, dated at Hartford the 5th of December, 1798, and directed to Ebenezer Hall 3d. The deed was not acknowledged, but was proved by the testimony of one of the subscribing witnesses in 1807, after the decease of Hall Tufts, and was duly recorded.

The commissioner found that the mortgage was intended by Hall Tufts to secure the note above mentioned, because in his several letters of September 10th, 1798, addressed to Ebenezer Hall 4th, and of November 12th, December 4th, and December 5th, 1798, addressed to Ebenezer Hall 3d, (which were in the case and are described and quoted in the opinion of the Court) he acknowledges that he is indebted to Ebenezer Hall in a note of hand, and professes his willingness to secure it on any property " in possession, reversion, or expectancy "; and because the mortgage describes a note of the same date and amount as that which was held by Ebenezer Hall.

There were four persons living in Medford, named Ebenezer Hall. Ebenezer Hall 4th testified, that he never had any dealings with or claims upon Hall Tufts, and that he had often taken letters from the post-office addressed to Ebenezer Hall 4th, which on opening he found belonged to Ebenezer Hall 3d. These facts led to the conclusion, that in the letter above specified, addressed to Ebenezer Hall 4th, Hall Tufts had mistaken the legal designation of the Halls and supposed that he was addressing his creditor.

In the ledger of Ebenezer Hall were entries, in an account opened with Hall Tufts, of a charge, under date of September 15th, 1797, of £85 19s. 2d., for rum, and a credit under date of March 12th, 1798, of the same amount, by note. These entries were in the handwriting of Ebenezer Hall 3d.

In 1810, Ebenezer Hall 3d, (then Ebenezer Hall 2d, his legal designation having been changed, in consequence of his father's death,) assigned the mortgage to Joseph P. Hall, his heirs, &c. " with the right to receive to his and their own use, the sum mentioned in the condition of said deed, whenever the same shall be legally tendered or paid agreeably to the condition thereof." Joseph P. Hall died in 1813, and the demandant was duly appointed his administratrix.

Hall Tufts died in 1801 ; and from the time of making the

Hall
v.
Tufts.

note he had no visible means of paying it, except by the property mortgaged.

The tenant, after the decease of his mother and until the commencement of this suit, held exclusive possession of the real estate in question, denying all right of the demandant thereto.

Ebenezer Hall, the elder, died in 1800, leaving two sons and a daughter. Ebenezer Hall 3d, the eldest son, was born 'n 1770, and died in 1812. Gilbert Hall, the second son, was born in 1771, and died in 1802, without issue and unmarried. The two sons, when they respectively came of age, or soon after, became jointly interested with their father in the business of a distillery and store, and neither of them did any business except in this connexion. The books were kept in the name of Ebenezer the elder till the time of his decease, in 1800, though Ebenezer the son made the purchases of goods for the store and distillery and gave his own notes for them ; which notes were generally indorsed by his father, who gave little attention to business after his sons became connected with him. Ebenezer Hall 3d was appointed administrator of the estate of his father. The note of Hall Tufts was not indorsed by any one. In the assignment of the mortgage, Ebenezer Hall 3d does not style himself administrator or surviving partner. The note was not inventoried as a part of the personal property of his father. The husband of the testator's daughter assented to the claim of Ebenezer Hall 3d to hold all the stocks and demands of the distillery and store as surviving partner.

The tenant objected to the statement of the intent of Hall Tufts to secure the note above described, and to the evidence from which that intent was inferred, and to the evidence of the copartnership. He also objected to the recovery of the demandant, on the grounds, that the note produced did not comport with the mortgage deed, and was not intended to be secured thereby ; and that by the terms of the will of Simon Tufts, Hall Tufts could not dispose of his share of the land in question, in his mother's lifetime.

Jan. 19th,
1837 at
Boston

A. Peabody and A. Bartlett, for the demandant.

Hoar and F. Dexter, for the tenant, contended that the estate given to Hall Tufts was a contingent remainder, which

was defeated by his dying before his mother and went over to nis heirs, and that consequently nothing passed by his deed of mortgage. But they relied more particularly on the point, that the note was made to one person and the mortgage to arx ther, and that parol evidence that the mortgage was given by mistake to the wrong person, or to secure a note differing from the one described in the deed, was inadmissible, as it would vary the written contract. *Fitzhugh* v. *Runyon*, 8 Johns. R. 292 ; *Montague* v. *Smith*, 13 Mass. R. 396 ; *New Berlin* v. *Norwich*, 10 Johns. R. 229 ; *Dwight* v. *Pomeroy*, 17 Mass. R. 303. They said the case of *Johns* v. *Church*, 12 Pick. 557, cited on the other side, had carried the law further than it has ever been carried before, and was not sustained by any authority.

PUTNAM J. delivered the opinion of the Court. It is objected for the tenant, that the mortgager could not, according to the terms of the will of Simon Tufts, under which he claimed, convey the estate during his mother's lifetime ; that it was a life estate to the mother, with a contingent remainder to the children of the devisor, expectant upon their surviving their mother, and that the shares of those who died in her lifetime, should go to the heirs ; and if so, that then the deed which was made in the lifetime of the mother, passed nothing.

This depends upon the true construction of the will.

The devisor, by his will, gave the demanded premises to his wife for life, and he gave " the remainder of his estate, whether real or personal, in possession or reversion, to his five children, (of whom Hall Tufts, the mortgager, was one,) to be equally divided to and among them or their heirs respectively, always intending and meaning, that none of his children shall dispose of their part of the real estate in reversion before it is legally assigned." His wife survived him, entered on the premises and held them until her death, which happened on the 30th of August, 1830.

The clause in the will which follows immediately after the devise of the remainder to his five children, is manifestly against the rule of the law, which enables one seised of a vested remainder, to dispose of it during the existence of the life estate. It is manifest that he intended to give to them the remainder in

fee, expectant upon the death of his wife. But his intent that they should not dispose of their part until it should be assigned to them in severalty, was wholly inconsistent with the law, and must be rejected. 60 Lit. 223 *a*; Lit. § 360: "If a feoffment be made upon condition that the feoffee shall not *alien* the land to any, this condition is void, because when a person is enfeoffed of lands or tenements, he hath power to alien them to any person *by the Law*." And the like law is of a devise in fee upon condition that the devisee shall not alien; the condition is void. The general intent of the testator is clear, and is to be carried into effect notwithstanding any desire expressed concerning the mode of enjoyment of the bounty, which is inconsistent with the rules of law. Such an intent must be disregarded. "When the particular intent cannot be executed, the general intent must direct the constructi· n." *Parsons* C. J., for the whole Court, in *Hawley* v. *Northampton*, 8 Mass. R. 37. Here the particular intent cannot be executed consistently with the rules of the law.

We are all satisfied that this objection cannot prevail; that this was a vested remainder in the five children, and that Hall Tufts (one of them) might legally dispose of his undivided fifth part of it in the lifetime of his mother, the tenant for life.

But the material objection is, that no debt is proved to be due to Ebenezer Hall 3d, the mortgagee; that the note produced is payable to Ebenezer Hall, and not indorsed by him; and it is contended that parol evidence cannot be received to show that Ebenezer Hall 3d, the person named as the mortgagee, was the same person named as Ebenezer Hall in the note; in short, that there is no note produced to which the mortgage can be intended to refer.

Whether the note produced be the one which was referred to in the mortgage, is a fact which may be proved by parol evidence. It comes within the principle of parcel or not, of the premises intended to be conveyed.

In the case at bar, there is a mistake of 1000 years in the description of the note which is found in the mortgage. It is there said to be dated Medford, March 13th, one thousand seventeen hundred and ninety-eight; but the note produced bears date Medford, March 13th, 1798. This is so palpably

a mere clerical mistake, that no reliance is made upon it by the counsel for the tenant.

But the note is payable to Ebenezer Hall, and the mortgage is to Ebenezer Hall 3d, and they are different persons, and not one person known by the same name, or sometimes by one name and sometimes by the other name. How then can Ebenezer Hall 3d be considered as the payee, in such manner as to be authorized to collect or take security for payment of the note, without any indorsement of it by Ebenezer Hall?

We think that the facts found by the master, and found too upon legal evidence, furnish an answer to the inquiry. Ebenezer Hall 3d, was the partner of Ebenezer Hall, and the note was given, in part at least, for *merchandise* received by the promisor which belonged to the partners, as well as for money lent to the promisor. Ebenezer Hall, the payee, died in May, 1800. His sons Gilbert and Ebenezer 3d, were jointly interested with him in the business of a distillery. The books were kept in the name of Ebenezer Hall, until the time of his decease. Gilbert died in 1802, and Ebenezer 3d, in 1812. The sons transacted the business of the company, which was carried on in the name and firm of "Ebenezer Hall." Upon the death of the father, this note was not inventoried as a part of his individual separate estate, yet the inventory contains a list of many notes due to him; but this note was, with the rest of the partnership property, taken into possession and disposed of by Ebenezer Hall 3d, as the surviving partner of the firm of Ebenezer Hall, with the knowledge and consent, or without any objection, of the heirs of Ebenezer Hall, the father.

The demandant must prove that the note which she produces is the one to which the mortgage deed refers. The deed is to Ebenezer Hall 3d, and the note is payable to Ebenezer Hall. But the condition contained in the mortgage does not state the name of the payee. It runs thus : "Always provided, and these presents are upon condition, that whereas the said Ebenezer Hall 3d, by a note of hand dated Medford, March thirteenth, one thousand seventeen hundred and ninety-eight, for the sum of four hundred and ninety-five dollars twenty-one cents, payable on demand and on interest, *had* and signed by Hall Tufts." Now this recital merely states, that Ebenezer

Hall 3d, had a note signed by Hall Tufts, of the date and sum before mentioned. He was the holder of such a note. The recital goes on, "and as a further security, and collateral security, for the payment of the sum contained in said note, this instrument is made." Then comes the condition : "now, in case said Hall Tufts shall well and truly pay to the said Eben-ezer Hall 3d, the sum contained in said note, and the interest thereof, then the foregoing instrument is to be null and void, and of no effect, otherwise to stand and remain in full power and virtue in the law." There is no evidence that Ebenezer Hall 3d, ever had any other note against Hall Tufts than the one now produced. If the note had been payable to Ebene-zer Hall, and indorsed by him, Ebenezer Hall 3d, as the in-dorsee and holder, might well take a mortgage to secure the payment ; and so if he held such a note as a partner of the firm of Ebenezer Hall, he might well take a mortgage to secure it. The deed was written at Hartford, but the note was then at Medford. It might not be in the power of the mortgager to give a more particular description of it. He knew the sum, and the place where the note was made, and the date ; and the correspondence shows that the mortgage was made at the re-quest of Ebenezer Hall 3d. Under these circumstances, we cannot doubt but that parol evidence may be admitted to prove that the note now produced was the one to which the deed of mortgage referred.

And the case finds that the mortgage was given and intended to secure the note given to Ebenezer Hall, for the considera-tion aforesaid, which had been received from the company The note and mortgage were assigned by Ebenezer Hall 3d (by the name of Ebenezer Hall 2d,) to the plaintiff's intes tate for good consideration, on the 3d of July, 1810.

The evidence reported can leave no possible doubt upon these facts.

The mortgage was made by Hall Tufts, at the request of Ebenezer Hall 3d, as appears by the letter of Hall Tufts, of December 5th, 1798, inclosing the deed of that date, from Hartford. He begins this letter by addressing Mr. E. Hall, and at the close of it he addresses Mr. E. Hall 3d. A cir-cumstance showing that the one had as much concern in the

affair as the other. In the letter dated the day before that addressed to Ebenezer Hall, he speaks of receiving his son's letter, and says, "nothing is more natural than *your anxiety* about a note so situated." "But (he adds) what could induce Eben. to suspect my inclination to do every thing in my power to secure *him*, I am sure I know not." Thus indirectly acknowledging the concern or interest which both had in the note.

In his letter of the 10th of September, 1798, addressed in the inside to Mr. E. Hall, and by singular carelessness, on the outside, to Ebenezer Hall 4th, (who had never had any business with Hall Tufts,) he refers to the consideration of the note : " Borrowed money above all other negotiations, deserves the first attention, and the want of ability to return you not only what I have received this way, *as well as by the purchase of rum*, has given me the greatest distress." Thus placing the money and rum to the same account. The charges for the rum were made in the handwriting of Ebenezer Hall 3d, in the company books of " Ebenezer Hall."

It would be unnecessary to dwell longer upon these, or to refer to a great many other circumstances in the case proving, to the entire satisfaction of the Court, that there was such a partnership in the name and firm of Ebenezer Hall, and that the consideration of the note was the money and rum which belonged to the company. It was a note payable to the firm of " Ebenezer Hall." Ebenezer Hall 3d had a right to collect or receive the money due upon it, and if not paid, a right to take any collateral security for the payment of the same, he being accountable for the proceeds to the company. If he had foreclosed the mortgage, he would have been seised for the use of the company. He would be just as liable to account for the land, as he would have been for the money which he might have received for the note. The proceeds of the collateral security always should enure to the benefit of those who own the principal fund.

This, therefore, is not the case of a note given to one man and a mortgage given to another, but it is an undertaking to pay the amount of the note to partners, either of whom had a legal right to receive payment, to take security, or to discharge the whole upon satisfaction.

In coming to this result, we are guided by well known rules of law. For it cannot be contended, that the consideration of the note, and whether that which is produced is the one to which the mortgage referred, and also the question, whether there was a partnership or not, are not matters which may be proved by parol evidence. And these things being established, the legal result arises from clear principles of law. The deed to Ebenezer Hall 3d may stand as it is, and was made, to secure the debt due to the partnership. Ebenezer Hall 3d might assign the mortgage and the note as surviving partner, being accountable accordingly upon a final settlement of the concerns of the firm.

So we all think, that equity and the law unite in the opinion which we give, that the judgment shall be rendered for the demandant as upon a mortgage, according to the law in such case provided.